OPINION
{¶ 1} Appellant Luanne Altier ("mother") appeals the February 6, 2006 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her three minor children, and granted permanent custody of the children to appellee Tuscarawas County Job and Family Services ("the department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 22, 2004, the department filed a Complaint in the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging Brittany Hinkley (D.O.B. 5/6/89), Andrea Hinkley (D.O.B. 8/14/90), and Devan Altier (D.O.B. 10/2/92) were neglected and dependent children, and seeking temporary custody, or in the alternative, permanent custody, and/or planned permanent living arrangements of the children. At a hearing pursuant to Juv. R. 6 on November 19, 2004, the trial court placed the children in the temporary custody of the department. The trial court ordered mother to submit to drug and alcohol assessment and psychological evaluation, and ordered her to report for an immediate drug screen. The trial court further ordered no contact between mother and children until further order of the court.[1]
 {¶ 3} The department filed a Proposed Case Plan on December 17, 2004. At the adjudicatory hearing on December 21, 2004, the department dismissed its allegations of neglect and amended the dependency allegations. Mother advised the trial court she wished to change her plea from a denial to an admission. Via Judgment Entry filed December 23, 2004, the trial court found Brittany and Andrea Hinkley and Devan Altier to be dependent children pursuant to R.C. 2151.04. The trial court ordered the children remain in the temporary custody of the department. The trial court permitted mother to have supervised visitation with the children.
 {¶ 4} At the dispositional hearing on January 19, 2005, the trial court ordered the children remain in the temporary custody of the department. The trial court adopted the department's proposed case plan; permitted mother to continue supervised visitation with the children; and ordered mother to report for an immediate drug screen. Mother's case plan included parenting classes, a psychological evaluation, domestic violence assessment, a drug and alcohol assessment, random drug screens, and stable and appropriate housing and employment.
 {¶ 5} On October 11, 2005, the department filed a Motion for Permanent Custody. The trial court scheduled the matter for evidentiary hearing on February 2, 2006. Prior to the hearing, the guardian ad litem filed her report, recommending the trial court grant the department's motion for permanent custody. The following evidence was adduced at the permanent custody hearing.
 {¶ 6} Stephanie Sayre, the coordinator of Crisis Services at Community Mental Healthcare, testified she had been a substance abuse counselor with the facility prior to being promoted to her current position in January, 2006. In November, 2004, mother presented for an intake interview. Thereafter, Sayre met with mother on seven different occasions. Sayre stated mother had made some lifestyle changes during the course of her treatment, which included ending the relationship with her live-in paramour who had been accused of striking her eldest daughter, Brittany. Mother met with Sayre for counseling sessions on a regular basis between November, 2004, and January, 2005. However, there was a two month gap between her last appointment in January and her next appointment in March, a seven month gap between her appointments in March and September, and a two month gap between her appointment in October and her final appointment in January 3, 2006. When questioned by the children's guardian ad litem, Sayre stated mother had appointments scheduled between the March, 2005 appointment and the October, 2005 appointment, but missed those due to changes in her work schedule and transportation problems. On cross-examination, Sayre conceded Community Mental Healthcare had a staffing shortage, but Sayre commented such would not have prevented mother from seeing her on a minimum of a monthly basis.
 {¶ 7} Lawrence Agin, mother's probation officer, testified mother was on probation for a misdemeanor attempted drug trafficking, and as part of her probation, she was required to undergo drug testing. Agin testified he met with mother on January 17, 2006, and gave her an instant urine screen. The screen tested positive for marijuana, and mother admitted her use of the drug. Mother had been on probation since August, 2004. She had not dropped a positive screen since November, 2004.
 {¶ 8} Jennifer Benline, a positive parenting coordinator with Personal and Family Counseling Services, testified she started working with mother in February, 2005. Benline described mother as being too lenient with the children. Benline noted the children had been removed from mother's care at least two times, and mother had been through the parenting program on two prior occasions. According to Benline, mother did not meet with her for their final session, and did not make any effort to reschedule that appointment. When asked by the trial court if she perceived mother as accepting responsibility for her children's situation and the fact they had been in foster care three times, Benline answered, "No." Benline also noted mother only made a partial commitment to changing for the benefit of the children. Benline stated mother blamed the children's behavior as the reason they were removed from her care.
 {¶ 9} Joanne Ash, a therapist with the Center for Children and Family Development, testified she had been the therapist for Brittany, Andrea, and Devan since November, 2004. When the children began counseling with her, the major issues were physical abuse and domestic violence, substance abuse in the home, and separation from their mother. Ash noted Brittany, the oldest child, had stated on numerous occasions she would like to remain in her current foster care situation. The other two children talked about reunification with mother, but none of the children wanted to be returned to mother until she completed the case plan, specifically with respect to substance abuse and domestic violence. Ash stated the children did not have any behavioral issues or mental health issues which would prevent permanency planning. Ash added the children were socially stable and doing well in school, and "integrated across all spheres". Tr. at 113. Ash conducted family therapy with mother and the children. From her observations, Ash concluded mother did not protect the children.
 {¶ 10} Kristin Masten, an ongoing case manager with the department, testified she became involved with the family in July, 2005. Mother had regular visitation with the children and the visits were fairly non-problematic. Throughout the course of the case, mother had had several jobs, and at the time of the hearing, was unemployed. Mother's live-in boyfriend had moved out of the residence, however, at the time of trial, mother was living with another man to whom she was engaged. Masten stated she did not think the new man in mother's life was a good idea at this point as the children had never met him and the children had expressed concerns regarding mother's past relationships. Masten noted the children had been in mother's custody for only two of the last twelve years. Masten added mother had not substantially complied with her case plan by failing to participate in individual counseling on a regular basis, failing to submit to drug screens, and failing to complete the positive parenting program. Masten continued mother had only recently completed the psychiatric evaluation aspect of her case plan. Although mother was employed throughout the course of the case, her employment was not steady. Transportation was an issue for mother, yet she never took advantage of the department's offer to provide her with such.
 {¶ 11} Via Judgment Entry filed February 6, 2006, the trial court granted permanent custody of the children to the department.
 {¶ 12} It is from this judgment entry mother appeals, raising the following assignment of error:
 {¶ 13} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE APPELLEE HAD MADE REASONABLE EFFORTS IN ATTEMPTING TO REUNIFY APPELLANT WITH HER CHILDREN AND THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN."
 {¶ 14} This appeal is expedited and is being considered pursuant to App. R. 11.2 (C).
 I {¶ 15} In her sole assignment of error, mother contends the trial court's findings the department made reasonable efforts for reunification and permanent custody was in the best interest of the children were against the manifest weight of the evidence.
 {¶ 16} We first address mother's argument with respect to the trial court's finding the department made reasonable efforts to reunite the family.
 {¶ 17} R.C. 2151.414 states, inter alia:
 {¶ 18} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 19} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 20} "(b) The child is abandoned.
 {¶ 21} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 22} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 23} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1); In re Bender, Stark App. No. 2004CA00015, 2004-Ohio-2268.
 {¶ 24} A "good faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage. * * * A lack of good faith effort is defined as importing a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud." In reWeaver (1992), 79 Ohio App.3d 59, 63-64.
 {¶ 25} The trial court specifically found "despite diligent, reasonable efforts and planning by [the department] to remedy the problems which caused removal of the children, [mother has] failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal." February 6, 2006 Judgment Entry at 3. Mother asserts the case plan developed for her by the department was destined to fail. Mother points to the counseling agency to which the department referred her and its inability to handle the needs of its clients due to understaffing. Mother explains the counseling agency could not give her the weekly sessions her counselor recommended and without such, she was prevented from successfully completing counseling. Mother adds she maintained appropriate housing and there were no issues with her parenting education other than an inability to schedule a "closeout" session with the educator.
 {¶ 26} The elements of mother's case plan included individual counseling, substance abuse treatment, parenting education and the ability to demonstrate she could obtain and maintain an independent lifestyle free of domestic violence and financial dependence. Although Stephanie Sayre, mother's therapist, acknowledged her office was understaffed, which would have made weekly or biweekly sessions difficult, Sayre stated appointment delays would have been a month at most. According to Sayre's records, mother had gaps of two months and seven months between sessions, and those gaps could not be attributed to a lack of therapist availability. Mother failed to remain drug free, testing positive for marijuana a mere two weeks before the hearing. Mother's parenting educator, Jennifer Benline, testified mother did not complete certain aspects of her homework, indicating a lack of motivation to address the issues. Benline noted mother did not accept any responsibility for the current situation, but targeted the blame on her children's behavior. We find the evidence in the record belies mother's assertion the trial court's finding the department used reasonable efforts to reunify the family was against the manifest weight of the evidence. We find the evidence shows the contrary.
 {¶ 27} We now turn to mother's position the trial court's finding it was in the children's best interest to grant permanent custody to the department was against the manifest weight of the evidence.
 {¶ 28} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 33} In the case sub judice, the children had developed a bond with their foster parents, who were considering adopting them. The children's therapist, Joanne Ash, stated the children had excelled since their placement foster care, both academically and socially. The evidence also indicated this was the third removal of the children from mother's home. The children had been in mother's custody for only two of the last twelve years. The issues which caused the first removal in 1994, remained at the time of the instant permanent custody hearing.
 {¶ 34} Upon review of the entire record in the matter, we find the trial court's finding it was in the children's best in interest to grant permanent custody to the department was not against the manifest weight of the evidence.
 {¶ 35} Mother's sole assignment of error is overruled.
 {¶ 36} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.
Hoffman, P.J. Farmer, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] Although the fathers of the children, Jerry Hinkley and David Sramcik, were parties in the trial court, neither has filed an appeal to this Court.